# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SHARKEY, | ) | CASE NO. 5:16cv2672 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, | ) | |
| | ) | |
| DEFENDANT. | ) | |

Proceeding *pro se*, plaintiff John J. Sharkey ("Sharkey") has brought this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552a, to compel disclosure by defendant United States Department of Justice ("USDOJ") of records that he believes will demonstrate that some person or persons have altered records at his place of employment to discredit him and have attempted to interfere with his efforts to hire counsel. (Doc. No. 1 (Complaint ["Compl."]).) The Federal Bureau of Investigation ("FBI") previously responded to Sharkey's FOIA requests by advising Sharkey that it searched its main file records but was unable to locate any documents responsive to his requests. Additionally, the FBI produced certain non-exempt records related to Sharkey, even though they were not responsive to his FOIA requests. USDOJ now moves for summary judgment, maintaining that the FBI satisfied its obligations under the FOIA with respect to Sharkey's document requests. (Doc. No. 22 ["MSJ"].) Sharkey did not file a response to USDOJ's dispositive motion, and the time for responding has passed. For the reasons set forth below, the Court will grant USDOJ's motion.

## I. BACKGROUND

In his complaint, Sharkey alleges that, since 2009, he has been engaged in investigating acts of securities fraud by "extremely wealthy and powerful entities" in anticipation of filing a civil enforcement action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Compl. ¶¶ 12, 15-17.) He believes that the government has engaged in illegal surveillance of his activities, and has attempted to interfere with his efforts to retain counsel to prosecute his civil RICO action, in a concerted effort to deny him "whistleblower bount[ies]" due by the Securities Exchange Commission ("SEC"). (*Id.* ¶¶ 16-17, 23-26.)

The present lawsuit represents the second action Sharkey has filed in this Court challenging the results of FOIA document requests. In *Sharkey v. Federal Bureau of Investigation*, N.D. Ohio Case No. 5:16-cv-837 ("*Sharkey I*"), Sharkey sought judicial review of three document requests related to the same private investigation of alleged securities fraud. In a memorandum opinion dated August 4, 2017, the Court granted the FBI summary judgment and dismissed the action, finding that the FBI had satisfied its obligations under the FIOA with respect to the first two requests and that Sharkey had failed to exhaust his administrative remedies as to the third. *See Sharkey v. F.B.I.*, No. 5:16-cv-837, 2017 WL 3336617 (N.D. Ohio Aug. 4, 2017). The Court assumes familiarity with the ruling in this related case. However, because the same technology was employed in both cases, the Court reproduces a portion of the decision in *Sharkey I* to provide context for USDOJ's summary judgment motion. In *Sharkey I*, the Court discussed the computer technology used by the FBI to respond to FOIA document requests as follows:

> The FBI maintains a Central Record System ("CRS") which is a database of records consisting of applicant, investigative, intelligence, personnel,

2

administrative, and general files compiled and maintained in the course of fulfilling its law enforcement, counterterrorism, and intelligence duties. (Doc. No. 28-2 (Declaration of David M. Hardy ["Hardy Decl."]) ¶ 33.)[1] The CRS spans the entire FBI organization, including its headquarters and field offices worldwide. (*Id*.) "The CRS consists of a numerical sequence of files, called FBI 'classifications,' which are organized according to designated subject categories. The broad array of CRS file classification categories include types of criminal conduct and investigations conducted by the FBI, as well as categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters." (*Id*. ¶ 34.)

The CRS is indexed in such a way as to permit navigation through the substantial information contained within the system. "The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters to include individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval." (*Id*. ¶ 35.)  The entries in the general indices consist of "main" entries (records indexed to the main file records) and "reference" entries (records that merely mention an individual or other subject matter). (*Id*. ¶ 35.)

Automated Case Support ("ACS") is "an electronic, integrated case management system that became effective . . . on October 1, 1995." (*Id*. ¶ 37.) Over 105 million CRS records were converted from the previous automated systems into a "single, consolidated case management system accessible by all FBI offices." (*Id*.) ACS was specifically designed for the "operational purpose and design to enable the FBI to locate, retrieve, and maintain information in its files in the performance of its myriad missions and functions." (*Id*., footnote omitted.)

The Universal Index ("UNI") is the "automated index of the CRS and provides all offices of the FBI a centralized, electronic means of indexing pertinent investigative information to FBI files for future retrieval via index searching." (*Id*. ¶ 38.) The UNI permits individual names to be recorded with applicable identifying information "such as date of birth, race, sex, locality, Social Security Number, address and/or date of an event." (*Id*.) "Moreover, ACS implementation built upon and incorporated prior automated FBI indices; therefore, a search employing the UNI application of ACS encompasses data that was already indexed into the prior automated systems superseded by ACS." (*Id*.) An index search using the UNI can search documents from 1995 to the present, and contains "approximately 114.3 million searchable records and is updated daily with newly indexed material." (*Id*.)

---

[1] In this case, USDOJ also offers an affidavit from David M. Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"). (Doc. No. 22-2 (Declaration of David M. Hardy ["Hardy Decl."]).) The affidavit provides virtually identical information relative to the computer databases and search engines employed by the FBI for identifying and retrieving documents.

"Sentinel is the FBI's next generation case management system that became effective FBI-wide on July 1, 2012." (*Id.* ¶ 39.) Sentinel "provides a web-based interface" and, after July 1, 2012, "all FBI generated records are created electronically in case files via Sentinel[.]" (*Id.*) While Sentinel "builds on ACS and shares its operation purpose," it did not replace ACS, and it simply serves as "another portal to locate information within the vast CRS for FBI records[.]" (*Id.*)

*Id.* at *1-2 (footnote added).

## A. Sharkey's FOIA Requests

### 1. Request No. 1347984-000

On March 25, 2016, Sharkey submitted a request seeking records from October 2015 through March 2016. (Doc. No. 22-2 (Declaration of David M. Hardy ["Hardy Decl."]) ¶ 6.) The document request pertained to Sharkey's allegations that certain individuals had changed the temperature logs at the Circle K conveniences store where Sharkey worked. (*Id.*; Doc. No. 22-3 (Mar. 25, 2016 FOIPA[2] Request) at 130-31[3]; *see* Compl. ¶¶ 11, 13.) By this same request, Sharkey also sought all records from April 2012 through April 2016 pertaining to alleged unauthorized surveillance of himself "as well as the 'names and addresses of all individuals involved in these illegal surveillance events and the illegal sharing of authorized surveillance information.'" (Hardy Decl. ¶ 6, quoting Mar. 25, 2016 FOIPA Request at 132.)

By letter dated April 7, 2016, the request was docketed as "FOIPA Request Number 1347984-000." (*Id.* ¶ 7, citing Doc. No. 22-3 (Apr. 7, 2016 FOIPA Docketing Letter) at 135.) Based upon the information supplied by Sharkey, an employee of the RIDS of the FBI formulated a CRS index search employing the UNI application of ACS using three variations of

---

[2] FOIPA is an acronym that stands for "FOIA/Privacy Act." (*See* Hardy Decl. ¶ 3.)

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

Sharkey's name—"Sharkey, John James", "Sharkey, John J" and "Sharkey, John"—"in order to identify investigatory files responsive to" Sharkey's request. (*Id*. ¶ 29.) The search also utilized a phonetic breakdown of Sharkey's name, and included Sharkey's dates of birth to identify responsive records. (*Id*.)[4] The April 7, 2016 letter advised Sharkey that the FBI's search failed to identify any main file records responsive to his request, and further advised him of his administrative appellate rights. (*Id*. ¶ 7; Apr. 7, 2016 FOIPA Docketing Letter at 135.)

On April 14, 2016, Sharkey filed an administrative appeal through USDOJ's Office of Information Policy ("OIP"). (Hardy Decl. ¶ 8, citing Doc. No. 22-3 (Apr. 14, 2016 OIP Appeal Request) at 139-40.) On April 19, 2016, the OIP acknowledged receipt of the administrative appeal and assigned it Appeal Number DOJ-AP-2016-002433. (*Id*. ¶ 9, citing Doc. No. 22-3 (Apr. 19, 2016 OIP Docketing Letter) at 142.) By letter dated May 27, 2015, Sharkey was advised that the OIP was affirming the FBI's action on his FOIPA request, finding that the FBI's response was correct and that its search represented an adequate and reasonable search for the requested records. (*Id*. ¶ 10, citing Doc. No. 22-3 (May 27, 2016 OIP Decision Letter) at 144.) The decision letter also advised Sharkey of his right to request mediation or seek judicial review in federal court. (*Id*., citing May 27, 2016 OIP Decision Letter at 144-45.)

2. Request No. 1355199-000

By means of an email dated July 26, 2016, Sharkey submitted a second FOIPA request that sought all records from June 10, 2016 through June 24, 2016, "pertaining to 'third persons and their willful, malicious actions' toward [Sharkey] in his attempt to obtain legal counsel to

_____

[4] Hardy explains that, ["w]ith the phonetic search function, the computer breaks names down based on their phonetic characteristics and will return results based on whether they phonetically match a certain percentage of the first and last names entered." (Hardy Decl. ¶ 29 n.7.)

'attempt to collect SEC whistleblower bounties.'" (Hardy Decl. ¶ 11, quoting Doc. No. 22-3 (July 26, 2016 email) at 147-48.) In a letter dated August 3, 2016, the FBI acknowledged receipt of the FOIPA request and assigned it Request Number 1355199-000. (*Id*. ¶ 12, citing Doc. No. 22-3 (Aug. 3, 2016 Docketing Letter) at 150.) Additionally, the letter advised Sharkey that his request did not contain sufficient information to conduct an accurate search of CRS and enclosed a Certification of Identity form (form DOJ-361) to assist Sharkey in supplying additional information. (*Id*.) On or about August 12, 2016, Sharkey returned the completed form DOJ-361, "signed by him under penalty of perjury wherein he listed his full name as John James Sharkey and provided other personal identifiers such as Current Address, Date of Birth, and Place of Birth." (*Id*. ¶ 13, citing Doc. No. 22-3 (Completed form DOJ-361) at 154.)[5]

In a letter dated September 7, 2016, the FBI advised Sharkey that a search of CRS was conducted, based upon the information he provided, but the search did not locate any main file records responsive to his FOIPA request. (*Id*. ¶ 15, citing Doc. No. 22-3 (Sept. 7, 2016 Response Letter) at 163.) Sharkey filed an administrative appeal through OIP's eFOIA portal concerning the FBI's response. (*Id*. ¶ 16, citing Doc. No. 22-3 (Sept. 13, 2016 OIP Appeal Request) at 168.) OIP acknowledged the appeal and assigned it appeal number DOJ-AP-2016-005329. (*Id*. ¶ 17, citing Doc. No. 22-3 (Sept. 16, 2016 OIP Docketing Letter) at 181.) After reviewing the search, OIP issued a decision letter on October 11, 2016, affirming the FBI's negative results and

---

[5] Sharkey resubmitted his July 26, 2016 request by means of an email dated August 17, 2016. (Hardy Decl. ¶ 14, citing Doc. No. 22-3 (Aug. 17, 2016 email) at 156.)

affirming the adequacy of the FBI's search. (*Id.* ¶ 18, citing Doc. No. 22-3 (Oct. 11, 2016 OIP Decision Letter) at 183-84.) The decision letter further advised that, to the extent that Sharkey's request sought documents that would either confirm or deny an individual's placement on a government watch list, such documents were protected from disclosure pursuant to 5 U.S.C. §§ 552/552a(j)(2/(b)(7)(E). Sharkey was advised of his appellate and mediation rights. (*Id.*)

## B. The Present Lawsuit and the FBI's Document Production

On November 2, 2016, Sharkey filed the present action. After receiving notice of the filing of the lawsuit, the FBI conducted another CRS search "for main and cross-references files using ACS, the UNI application[.]" (Hardy Decl. ¶ 30.) In a letter dated March 3, 2017, the FBI advised Sharkey that 26 pages of documents (none of which were responsive to the specifics and/or date range of Sharkey's request in this case) (*id.* ¶ 30) were reviewed and were being released "in full or part, with certain information withheld pursuant to FOIA Exemptions (b)(6)/(b)(7)(C) and (b)(7)(E)." (*Id.* ¶ 20, citing Doc. No. 22-3 (Mar. 3, 2017 Release Letter) at 186.)

The Court referred the present lawsuit to the magistrate judge for general pretrial supervision. On December 1, 2016, the magistrate judge denied Sharkey's request for the appointment of counsel. (Doc. No. 14.) On December 15, 2016, the magistrate judge denied Sharkey's request to consolidate the present case with *Sharkey I* and scheduled the matter for a case management conference. (Doc. No. 15 (Order Denying Consolidation); Doc. No. 16 (Case Management Conference Scheduling Order).) The magistrate judge conducted a telephonic case management conference on January 19, 2017, at which time she set dates and deadlines to govern the case. On April 7, 2017, USDOJ filed the present motion for summary judgment,

which, as the Court has observed, is unopposed. In its motion, USDOJ maintains that it is entitled to judgment, as a matter of law, because the FBI employed methods reasonably expected to discover information responsive to Sharkey's FOIPA requests, and even produced additional documents related to Sharkey, even though it was under no legal obligation to do so.

## II. APPLICABLE STANDARDS

### A. Summary Judgment

Under Fed. R. Civ. P. 56(a), when a motion for summary judgment is properly made and supported, it shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

An opposing party may not rely on allegations or denials in its own pleading; rather, by affidavits or by materials in the record, the opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1). Affidavits or declarations filed in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). A movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

In reviewing summary judgment motions, the Court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970);

*White v. Turfway Park Racing Ass'n*, 909 F.2d 941, 943-44 (6th Cir. 1990), *impliedly overruled on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225, 111 S. Ct. 1217, 113 L. Ed. 2d 190 (1991). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict[.]" *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established that create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992) (citation omitted). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*. (citation omitted).

Where (as here) a summary judgment motion is unopposed, "'a court's reliance on the facts advanced by the movant is proper and sufficient[.]'" *Cacevic v. City of Hazel Park*, 226 F.3d 483, 491 (6th Cir. 2000) (quoting *Guarino v. Brookfield Twp. Trs*., 980 F.2d 399, 404 (6th

Cir. 1992)). Nonetheless, the Court must still "intelligently and carefully review the legitimacy of such an unresponded-to motion," and it must disregard any factual assertions that are either misstated or taken out of context. *Guarino*, 980 F.2d at 407.

B.     **FOIA Actions**

"FOIA cases typically and appropriately are decided on motions for summary judgment." *ViroPharma Inc. v. Dep't of Health & Human Servs.*, 839 F. Supp. 2d 184, 189 (D.D.C. 2012) (citations omitted); *Rugiero v. U.S. Dep't of Justice*, 257 F.3d 534, 544 (6th Cir. 2001) ("Procedurally, district courts typically dispose of FOIA cases on summary judgment before a plaintiff can conduct discovery.") (citation omitted). To prevail on summary judgment in a FOIA case, the "government must show that it made a 'good faith effort to conduct a search for the requested records using methods reasonably expected to produce the requested information' . . . ." *Rimmer v. Holder*, 700 F.3d 246, 255 (6th Cir. 2012) (quoting *CareToLive v. Food & Drug Admin*., 631 F.3d 336, 340 (6th Cir. 2011)).

"At all times the burden is on the agency to establish the adequacy of its search[,]" although it "may rely on affidavits or declarations that provide reasonable detail of the scope of the search." *Rugiero*, 257 F.3d at 547 (citations omitted). Furthermore, "[i]n the absence of countervailing evidence or apparent inconsistency of proof, [such affidavits] will suffice to demonstrate compliance with the obligations imposed by the FOIA." *Id*. (quoting *Bennett v. Drug Enforcement Admin*., 55 F. Supp. 2d 36, 39 (D.D.C. 1999)) (alteration in original) (internal citation and quotation marks omitted). This standard comports with the traditional notion that, to defeat a motion for summary judgment, "the non-movant must show sufficient evidence to create a genuine issue of material fact," *see generally id*. at 543, and "on which the jury could

reasonably find for the [non-movant]." *Id*. (alteration in original) (quoting *Anderson*, 477 U.S. at 252) (internal quotation marks omitted); *see also Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 118 (D.D.C. 2010) ("In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that it conducted a search of records in its custody or control, *Kissinger v. Reporters Comm. for Freedom of the Press*, 445 U.S. 136, 150-51, 100 S. Ct. 960, 63 L. Ed. 2d 267 (1980), that was reasonably calculated to uncover all relevant information[.]" (citation omitted)).

## III. DISCUSSION

### A.     Adequacy of the Searches

"The adequacy of an agency's search is measured by a standard of reasonableness under the attendant circumstances." *Dillon v. U.S. Dep't of Justice*, 102 F. Supp. 3d 272, 282 (D.D.C. 2015) (citation omitted). "There is no requirement that an agency search every record system in response to a FOIA request; rather, it may limit its search to only those locations where responsive documents are likely to be maintained." *Id*. at 282 (citing *Porter v. CIA*, 778 F. Supp. 2d 60, 69-70 (D.D.C. 2001)); *Flowers v. I.R.S.*, 307 F. Supp. 2d 60, 67 (D.C.C. 2004) (citations omitted). Moreover, the adequacy of the search is not measured by the results, "but by the method of the search itself[.]" *Span*, 696 F. Supp. 2d at 121 (citing, *inter alia*, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)).

Agency affidavits or declarations setting forth the circumstances surrounding the agency's efforts to respond to the FOIA request are entitled to a presumption of good faith. *See id.* at 119 (citing *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "Speculative claims about the existence of additional documents are insufficient to rebut the

presumption of good faith accorded agency affidavits." *Id.* (citing *Flowers*, 307 F. Supp. 2d at 67). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Id.* (citing *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989)).

As the FBI did in *Sharkey I*, USDOJ relies on a declaration from David M. Hardy, the Section Chief of the RIDS of the RMD, to support its request for summary judgment. (Hardy Decl. ¶ 1.) As the Court observed in *Sharkey I*, Hardy has held this position since 2002, and the section he oversees is responsible for planning, developing, directing, and managing FOIA document requests submitted to the FBI. (*Id.* ¶ 2.)

With respect to Sharkey's requests, Hardy explains that an employee under his direction searched CRS because that is where the FBI indexes information about individuals, organizations, events and other subjects. (*Id.* ¶ 31.) Given its comprehensive nature, the CRS was most likely to contain documents responsive to Sharkey's document requests. (*Id.*) USDOJ notes that the only "discernible common thread" in Sharkey's requests was that "all of the alleged incidents involved Sharkey himself." (MSJ at 101.) Therefore, USDOJ insists that "a search of Sharkey's name was reasonably calculated to locate records responsive to Sharkey's request." (*Id.*, citing Hardy Decl. ¶ 31.) Further, USDOJ underscores the fact that the FBI took the initiative to run a third search and produced all non-exempt documents from that voluntary search.

Based on the searches described in Hardy's declaration, the Court finds that the declaration sets forth sufficient factual detail of the methods utilized in conducting the searches

for responsive documents for the Court to conclude that the FBI "'has conducted [searches] reasonably calculated to uncover all relevant documents.'" *Dillon*, 102 F. Supp. 3d at 284 (quoting *Elliott v. U.S. Dep't of Agric.*, 596 F.3d 842, 851 (D.C. Cir. 2010)). Sharkey has not come forward with evidence calling into question either search to overcome the presumption afforded the supporting declaration. Moreover, the Court has reviewed the record and finds no evidence demonstrating bad faith on the part of the FBI. Having determined that the FBI's methods could be "reasonably expected to produce the information request," the Court finds that USDOJ has met its burden of demonstrating that the FBI complied with its obligations under the FOIA.

B.      **Withholding of Exempt Documents**

USDOJ also argues that the record demonstrates that the FBI acted properly in withholding portions of certain documents located through the FBI's voluntary CRS search. Sharkey has raised no claim or otherwise challenged this search and records production. While the search occurred after Sharkey filed the present action, Sharkey never sought leave to amend his complaint to include allegations or claims relating to this governmental action. Nonetheless, in an abundance of caution, the Court shall review the record relative to the FBI's decision to withhold portions of certain documents from its March 3, 2017 document production.

As set forth above, excluded from the 26 pages of documents the FBI produced to Sharkey were portions of those pages pursuant to FOIA Exemptions 6 and 7. (Hardy Decl. ¶¶ 5, 36.) FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records of information compiled for law enforcement

purposes . . . to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). Courts have interpreted Exemption 7(C) as broader than Exemption 6 because 7(C) omits the word "clearly" before the "unwarranted invasion of personal privacy" language. *See Reporters Comm.*, 489 U.S. at 756. In evaluating the reliance on Exemption 7(C) to justify the withholding of documents, courts must "balance the privacy interests that would be compromised by disclosure against the public interest in release of the requested information." *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1281 (D.C. Cir. 1992) (citing *Reporters Comm.*, 489 U.S. at 762; *SafeCard Servs.*, 926 F.2d at 1205).

The documents at issue clearly were compiled for law enforcement purposes. The record shows that the documents produced to Sharkey were investigatory records pertaining to the FBI's investigation into Sharkey's complaints regarding insider trading and fraud, and include Import forms (FD-1036), internal routing slips, and Complaint forms. (Hardy Decl. ¶¶ 34, 40.) Records, such as these, that are compiled and/or generated in the course of an investigation into potential criminal activity are the very type of records that fall within the purview of Exemption 7(C). *See, e.g., Thompson v. U.S. Dep't of Justice*, 851 F. Supp. 2d 89, 98 (D.D.C. 2012) (FBI documents obtained during the course of bank robbery investigation are law enforcement records); *Bartko v. U.S. Dep't of Justice*, No. 13-1135 (JEB), 2015 WL 9272833, at *5 (D.D.C. Dec. 18, 2015) (records obtained or generated during FBI investigation of financial fraud activities are law enforcement records).

Applying the balancing of interests pertinent to Exemption 7(C) withholding of information, the Court finds that the FBI properly withheld certain information. For example, the

FBI redacted the names and identifying information of the FBI Special Agents and support personnel associated with the FBI's investigation. (Hardy Decl. ¶ 45.) The FBI has an obvious interest in protecting the identity of these individuals as publicity could compromise their effectiveness in this and other investigations and could expose them to potential safety risks. (*Id*. ¶¶ 45-46.) *See Lahr v. N.T.S.B.*, 569 F.3d 964, 977 (9th Cir. 2009). In the absence of any evidence that this identifying information is necessary to demonstrate any wrongdoing or complicity of the FBI, the Court finds that Sharkey's and the public's interest in this information is *de minimis*. *See SafeCard Servs.*, 926 F.2d at 1206; *see, e.g., Thompson*, 851 F. Supp. 2d at 99-100 (similar identifying information properly withheld under 7(C)).

The Court finds that information was also properly redacted or withheld pursuant to Exemption 7(E), which provides that agencies may withhold law enforcement records which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). Exemption 7(E) "sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'" *Blackwell v. F.B.I.*, 646 F.3d 37, 42 (D.C. Cir. 2011) (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009)).

Here, the FBI withheld key indicators that it uses for determining whether and how it enters data into non-public databases used for official law enforcement purposes. (Hardy Decl. ¶

49.) According to USDOJ, "[t]hese non-public databases contain counterterrorism and investigative data, which allow law enforcement personnel to query information and develop investigative leads from a variety of source data." (MSJ at 105, citing Hardy Decl. ¶ 49 and *Skinner v. U.S. Dep't of Justice*, 893 F. Supp. 2d 109, 114 (D.D.C. 2012) (access codes for non-public law enforcement databases exempt under 7(E)). Such information would clearly disclose law enforcement procedures, techniques or guidelines. Accordingly, public disclosure of such information would permit criminals to determine the types of information the FBI gathers, analyzes and utilizes within this database, and would reveal the location where such records and information is stored, making it vulnerable to cyber attackers. (Hardy Decl. ¶ 48.) Such information squarely falls within the protection of Exemption 7(E). *See, e.g., Hertz Schram PC v. F.B.I.*, No. 12-CV-14234, 2014 WL 764682, at *15 (E.D. Mich. Feb. 25, 2014) (reports and printouts from non-public investigative database exempt under 7(E)); *McRae v. U.S. Dep't of Justice*, 869 F. Supp. 2d 151, 169 (D.D.C. 2012) (information referring to non-public law enforcement databases exempt under 7(E)); *Asian Law Caucus v. U.S. Dep't of Homeland Sec.*, No. C 08-00842 CW, 2008 WL 5047839, at *4 (N.D. Cal. Nov. 24, 2008) (names of law enforcement databases exempt under 7(E)).

Sharkey has failed to come forward with any evidence raising a genuine issue of material fact as to whether this information was properly withheld, and the Court's review of the record points to none. Based upon the record, the Court finds that the FBI's right to protect this

information substantially outweighs any interest Sharkey and the public have in its disclosure.[6]

## IV. Conclusion

For all of the foregoing reasons, as well as those set forth in USDOJ's dispositive motion, the Court grants USDOJ summary judgment. This case is dismissed.

**IT IS SO ORDERED**.


Dated: February 13, 2018

                            **HONORABLE SARA LIOI**
                            **UNITED STATES DISTRICT JUDGE**

---

[6] Because the Court finds that the information was properly redacted or withheld under Exemption 7, it need not consider whether it also was properly withheld under Exemption 6.